**MICHAEL C. BAXTER**
Oregon State Bar ID Number 910203
michael@baxterlaw.com
**JUSTIN M. BAXTER**
Oregon State Bar ID Number 992178
justin@baxterlaw.com
Baxter & Baxter LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone (503) 297-9031
Facsimile (503) 291-9172
Attorneys for Plaintiff Alqudah

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RAJAA ALQUDAH**, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | Negligence, Gross Negligence, Conversion, Money Had and Received, Unlawful Trade Practice Act, ORS 646.605 et seq., Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 |
| **WELLS FARGO BANK, N.A., JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, and JOHN DOE 4,** | |
| Defendants. | Demand for Jury Trial |

Plaintiff alleges that at all times material:

1.

The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331.

The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Page  1 – COMPLAINT

2.

Plaintiff Rajaa Alqudah is a natural person residing in the State of Oregon. She is the victim of an elaborate scheme to defraud.

3.

Defendant Wells Fargo Bank, N.A. is a foreign corporation that transfers money across state lines. Defendants John Doe 1, John Doe 2, John Doe 3, and John Doe 4 are unknown individuals of unknown whereabouts. On information and belief, Plaintiff alleges that Wells Fargo knows the identity of one or more of these unknown individuals, because Wells Fargo opened and maintained the bank account used to defraud Plaintiff.

4.

At or about 3:20 p.m., on Thursday, September 20, 2018, Plaintiff, a Muslim, received a telephone call from a caller (hereinafter referred to as "John Doe 1") purporting to be with the Oregon police. The number that appeared on Plaintiff's caller ID was 503-731-3020. Plaintiff immediately Googled the number and confirmed that the phone number appeared to be from the Oregon police and valid. John Doe 1 went on to tell Plaintiff that he was investigating a crime which included money laundering, drugs, and wire transfers to terrorist organizations outside the United States such as ISIS. John Doe 1 told Plaintiff that the police and the Federal Bureau of Investigation (FBI) believed that someone had stolen her identity and committed numerous crimes in her name outside the United States. He continued that he had found at least sixteen bank accounts under her name.

5.

John Doe 1 went on informing Plaintiff that in order to protect her finances she needed to immediately close all of these accounts. This included her bank account. He informed her that

during its investigation she would not have access to the funds in her bank account. However, she needed to wire her funds to a specific government holding account and they would return these funds after the police investigation.

6.

While on the line with John Doe 1, Plaintiff received a second call, which appeared on caller ID, from a different telephone number, 301-688-6311. After Googling that second telephone number, she discovered the phone number for the National Security Agency (NSA). She changed lines to her call waiting line. The individual on the call waiting line (hereinafter referred to as "John Doe 2"), confirmed what John Doe 1 had told Plaintiff. He said there was an ongoing investigation that they hoped to wrap up quickly and he would keep her informed.

7.

Plaintiff went to her Chase branch bank and while she was waiting in line, John Doe 2 remained on the phone. John Doe 2 told Plaintiff that she did not need to wire the funds yet. He said the investigation was ongoing and that he would call with any updates and any additional steps that might be needed from her side. He told Plaintiff that although she presently did not have to do anything, she should not disclose the investigation to anyone (even to her husband or family). He indicated that if she involved any additional person they would immediately become part of the investigation and may complicate the situation. Accordingly, Plaintiff went back home.

8.

The next morning, at or about 8:57 a.m., on September 21, 2018, Plaintiff received a call from another individual (hereinafter referred to as "John Doe 3"). John Doe 3 used the same phone number as John Doe 1 had used, e.g., 503-731-3020. John Doe 3 purported to be with the

Oregon State Police. John Doe 3 told Plaintiff that the Oregon police had a case file under her

name with her identity. He told Plaintiff that her identity had been stolen by a ring of criminals

that police knew to be deliberately stealing consumers' identities. John Doe 3 told Plaintiff that

the identity theft ring possessed all of Plaintiff's identification. He told Plaintiff that she needed

to quickly transfer her money from her bank account into a special FBI account to protect it from

the threat of cyber attack. The money was to go into a special holding account during the period

that Plaintiff's other accounts were closed so that she would not lose any money while the

government conducted its investigation. John Doe 3 told her to send the money to via a wire

transfer to a Wells Fargo account.

9.

As Plaintiff was speaking to John Doe 3, her call waiting again came on in her cell phone

informing her she was simultaneously receiving a 911 call on her second telephone line. She

switched lines to the 911 call and spoke to a male caller (hereinafter referred to as "John Doe 4").

John Doe 4 informed Plaintiff that her switchboard was indicating that Plaintiff was currently

speaking to the Oregon police regarding the theft of her identity. John Doe 4 told Plaintiff to

work with the Oregon police so that they could catch the identity theft criminals. He also

informed Plaintiff that the FBI was involved in the case and that Plaintiff should work closely

with them. He told her that if she was not cooperative she could be arrested.

10.

The calls were incredibly convincing. Plaintiff immediately went to her local Chase

branch bank and wired the money from her bank account, exactly as the John Doe 1 and 3

directed. At 9:53 a.m., $24,000 was transferred to a Wells Fargo branch bank in Texas, alleged to

be a holding account for the FBI.

Page  4 – COMPLAINT

11.

An hour later, at or about 11:00 a.m. that morning, Plaintiff went to the Sherriff's office in Bethany, Oregon. She was informed that she had been a victim of an identity theft ring who had perpetrated a scam on her. She learned that the Oregon police actually were not involved.

12.

At 11:05 a.m. Plaintiff went to the Chase branch bank to place a stop on her wire transfer. Chase's Branch Manager called Chase's wire transfer department. She informed them of what happened and asked them to stop the transfer.  Chase wire transfer department sent this first message to the Wells Fargo wire transfer office telling them to stop the fraudulent $24,000 wire transfer, indicating that Plaintiff was a victim of identity theft fraud being perpetrated on her. The manager then spoke to a Wells Fargo wire transfer representative named Zelle. Chase repeated the same message to Zelle.

13.

Around 1:00 p.m. on September 21, 2018, Plaintiff went to a local Wells Fargo branch bank to see if the money was being returned. She gave the branch manager the Texas account number of the person the money was supposed to be transferred to. The Wells Fargo manager looked up the account and told her he could not disclose details to her because she was not a customer of Wells Fargo but told her that there was indeed suspicious activity in the Texas account and the money had not yet been transferred.

14.

At 2:30 p.m. on September 21, 2018, Plaintiff telephoned the FBI. The FBI had no knowledge of any calls being made to Plaintiff.

15.

At approximately 3 p.m., Plaintiff filed a claim with the Federal Trade Commission.

16.

On September 22 and 23, 2018, Plaintiff attempted to get hold of either Chase or Wells Fargo. She was unable to contact either office.

17.

Around 5:30 a.m.  on Monday, September 24, 2018, Plaintiff called the Chase wire investigation department. She spoke to a representative named Eliver. The Chase representative had been unable to receive any response from Wells Fargo regarding canceling Plaintiff's wire transfer. Plaintiff asked Chase to send another request and to label it Urgent.

18.

Around 6:00 a.m. on the morning of Monday, September 24, 2018, Plaintiff got through to the Wells Fargo fraud department. She spoke to a person named Mishan, and then a person named Celeste. They were unwilling to give her any information concerning her wire transfer.

19.

Around 9:00 a.m. on September 24, 2018, Plaintiff went to the Chase Branch in Bethany and spoke to the manager. The manager called the Wells Fargo wire department and talked to a Lowell. Lowell confirmed to the Chase manager that it had received the two messages from Chase bank but was unwilling to provide further information.

20.

Later that day Plaintiff went directly to the local FBI office and met with FBI agent Sandy Flint. Ms. Flint told Plaintiff that she would speak with the FBI representative from Wells

Fargo and inquire as to the status of the transfer.

21.

At 5:30 a.m. on Tuesday morning, September 25, 2018, Plaintiff called Chase. Wells Fargo had notified Chase that it had received Chase's messages and they were processing the information. Wells Fargo refused to provide any further update as to what had happened to stop the wire transfer.

22.

Around 9:00 a.m. on Tuesday, September 25, 2018, Plaintiff went to the Chase Bank branch to see if it had any new information. Chase told her that Wells Fargo sent a message as follows: "Please be advised we are unable to comply with your request. Please have remitter contact the proper authorities. We have closed our file."

## FIRST CLAIM FOR RELIEF

### Negligence

### Wells Fargo Bank, N.A.

23.

Plaintiff realleges paragraph 1 through 22, as if fully set forth herein.

24.

Wells Fargo owed Plaintiff a duty to not facilitate or assist John Does 1 through 4 in defrauding Plaintiff. The breach of this duty unnecessarily created a foreseeable risk of harm to Plaintiff, in one or more of the following ways:

a. Wells Fargo failed to prevent Plaintiff's $24,000 wire transfer from moving her money to an account in Texas;

b. Wells Fargo intended to not immediately place a hold on Plaintiff's $24,000 wire

transfer upon notice from Chase Bank that fraud was involved; and

    c.  Wells Fargo was aware of suspicious activity in the Texas account yet continued to prevent wire transfers from going into that account.

25.

Defendant's breaches caused foreseeable damages to plaintiff of $24,000 as described herein.

<strong><u>SECOND CLAIM FOR RELIEF</u></strong>

<strong>Gross Negligence</strong>

<strong>Wells Fargo Bank, N.A.</strong>

26.

Plaintiff realleges paragraph 1 through 22, as if fully set forth herein.

27.

Wells Fargo owed a duty to not knowingly or recklessly assist in participating in the defrauding of Plaintiff. Defendant Wells Fargo conduct was in flagrant disregard of Plaintiff's rights and shows evidence of an indifference or reckless disregard to the rights of all Oregonians. The disregard of these rights necessarily created a foreseeable risk of harm to Plaintiff, and in fact caused harm, by breaching that duty, in one or more of the following ways:

    a.  Wells Fargo failed to prevent Plaintiff's $24,000 wire transfer from moving her money to an account in Texas;

    b.  Wells Fargo intended to not immediately place a hold on Plaintiff's $24,000 wire transfer upon notice from Chase Bank that fraud was involved; and

    c.  Wells Fargo was aware of suspicious activity in the Texas account yet continued to prevent wire transfers from going into that account.

28.

Wells Fargo's conduct caused Plaintiff to sustain $24,000 in actual damages in addition to emotional distress, frustration, mental anguish, economic loss, and interference with normal and usual activities, in an amount to be determined by the jury.

29.

Plaintiff is entitled to an award of punitive damages, in an amount to be determined by the jury.

**THIRD CLAIM FOR RELIEF**

**Unlawful Trade Practice Act**

**Wells Fargo Bank, N.A.**

30.

Plaintiff incorporates by reference paragraphs 1 - 22 above.

31.

Defendant provides services within the meaning of O.R.S. 646.605(6) because, as to Plaintiff and each person similarly situated, the services provided were obtained primarily for purposes of family, household, or personal use.

32.

Defendant is a person within the meaning of O.R.S. 646.605(4).

33.

Pursuant to O.R.S. 646.638, Plaintiff hereby affirms that concurrent to filing this Complaint with the Court, Plaintiff mailed a certified copy of the same to the Oregon Attorney General.

34.

Defendant violated O.R.S. 646.608 in the following ways:

a.  Representing that services have approval, characteristics, uses, benefits, quantities or

qualities that the services do not have, in violation of O.R.S. 646.608(1)(e); and

b.  Making false or misleading representations concerning credit availability or the

nature of the transaction or obligation incurred, in violation of O.R.S. 646.608(1)(k).

35.

Plaintiff has suffered an ascertainable loss of money, as a result of Wells Fargo's willful

use or employment of a method, act or practice. Plaintiff is entitled to an award of actual

damages of $24,000.

36.

Plaintiff is entitled to recover her reasonable attorney fees, pursuant to O.R.S. 646.638.

37.

Plaintiff is entitled to an award of punitive damages, in an amount to be determined by

the jury.

**FOURTH CLAIM FOR RELIEF**

**Money Had and Received**

**All Defendants**

38.

Plaintiff incorporates by reference paragraphs 1 - 22 above.

39.

Plaintiff did business with Chase Bank, which used Wells Fargo in transferring money

from Oregon to John Doe 1 through 4. On September 21, 2018, Wells Fargo, after receiving

Plaintiff's funds, became indebted to Plaintiff when Chase Bank notified it that Plaintiff had been

scammed by an identity theft criminal organization and Plaintiff's funds were being stolen by

John Doe 1 through 4. Wells Fargo had not yet transferred these funds to John Doe 1 through 4.

Wells Fargo did not prevent those funds from being wired to John Doe 1 through John Doe 4.

40.

On information and belief, John Doe 1 through 4 received Plaintiff's money in their Wells

Fargo bank account, and then removed Plaintiff's money from their Wells Fargo bank account.

41.

As a result of defendants' actions, plaintiff has been damaged in the amount of $24,000.

42.

Plaintiff is entitled to an award of punitive damages, in an amount to be determined by

the jury.

## FIFTH CLAIM FOR RELIEF

### Conversion

### All Defendants

43.

Plaintiff realleges and incorporates paragraphs 1- 22 as if fully set forth herein.

44.

Defendants intentionally and wrongfully exercised complete dominion and control over

plaintiff's $24,000. Wells Fargo was aware that Plaintiff was the victim of fraud and that the

subject account had been flagged for suspicious activity. Despite this knowledge, Wells Fargo

allowed John Doe 1 through 4 to maintain the account, and allowed Plaintiff's funds to be wired

to the account and withdrawn by John Doe 1 through 4.

45.

On information and belief, John Doe 1 through 4 received Plaintiff's money in their Wells Fargo bank account, and then removed Plaintiff's money from their Wells Fargo bank account.

46.

Plaintiff is entitled to injunctive relief requiring the return of her $24,000.

47.

Plaintiff is entitled to an award of punitive damages, in an amount to be determined by the jury.

## SIXTH CLAIM FOR RELIEF

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT

## 18 U.S.C. §§ 1961-1968

## All Defendants

48.

Plaintiff realleges and incorporates paragraphs 1 – 22, as if fully set forth herein.

49.

There existed an enterprise affecting interstate commerce, consisting of Wells Fargo, John Doe 1 through 4.

50.

Each of the defendants was associated with the enterprise.

51.

Each of the defendants participated directly or indirectly, in the conduct or affairs of the enterprise.

52.

Each of the defendants participated in a pattern of racketeering activity that included but was not limited to telephone fraud and wire fraud.

53.

Plaintiff was injured in her business or property by reason of such conduct

54.

Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to treble damages of $72,000.

55.

Plaintiff is entitled to her reasonable attorney fees, pursuant to 18 U.S.C. § 1964(c)

<u>PRAYER</u>

Plaintiff demands a jury trial on all claims. Wherefore plaintiff prays for a judgment as follows:

1.    On Plaintiff's First Claim for Relief:

    a.    Damages;

    b.    Reasonable costs incurred herein

2.    On Plaintiff's Second Claim for Relief:

    a.    Damages;

    b.    Punitive damages;

    c.    Reasonable costs incurred herein.

3.    On Plaintiff's Third Claim for Relief:

    a.    Damages;

    b.    Punitive Damages;

    c.    Reasonable attorney fees and costs.

4.      On Plaintiff's Fourth Claim for Relief:

      a.      Damages;

      b.      Punitive damages;

      c.      Reasonable costs incurred herein

5.      On Plaintiff's Fifth Claim for Relief:

      a.      Damages;

      b.      Punitive damages;

      c.      Reasonable costs incurred herein.

6.      On Plaintiff's Sixth Claim for Relief:

      a.      Treble Damages;

      b.      Reasonable attorney fees and costs.

DATED this 28th day of November 2018.

/s/ Michael C. Baxter

_____

Michael C. Baxter, OSB # 910203
michael@baxterlaw.com
Justin M. Baxter, OSB # 992178
justin@baxterlaw.com
Telephone (503) 297-9031
Facsimile (503) 291-9172
Attorneys for Plaintiff